IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEANDRE BRADLEY,

                Plaintiff,

v.

ALEX JONES,
ROB JEFFREYS,
FRANK LAWRENCE,
DAVID EVELSIZER,
DANIEL GARCIA,[1]
SHANE SULSER,
SERGEANT BLAKE,
C/O ROBINSON,
C/O EVINGER,
JAMES BROCKMYER,
JOHN DOE 1, *Correctional Officer,*
JOHN DOE 2, *Lieutenant,*
ROSE,
RON SKIDMORE,
JOHN DOE 3, *Mental Health Doctor,* **and**
UNKNOWN PARTY, *Mailroom Staff,*

                Defendants.

Case No. 20-cv-00139-RJD

## MEMORANDUM AND ORDER

**MAGISTRATE JUDGE REONA J. DALY:** [2]

Plaintiff Deandre Bradley brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while incarcerated at Menard Correctional Center ("Menard"). He claims that staff at Menard subjected him to cruel

---

[1] The Clerk of Court is directed to correct the docket to reflect Defendant Garcia's name as provided in the Complaint: Daniel Garcia. (Doc. 1, p. 1).

[2] The Court has jurisdiction to screen Bradley's Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction, as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

and unusual punishment, retaliation, inadequate healthcare, and excessive force. He also claims that his legal mail was mishandled and he was denied access to the courts.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[3] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Court must also consider whether any claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## COMPLAINT

Bradley alleges the following: He is double incontinent and wheelchair bound due to a preexisting condition and paralysis of his right leg. He uses catheters, diapers, and a wheelchair daily. (Doc. 1, p. 11).

On October 27, 2019, while housed in segregation, Correctional Officer Garcia denied Bradley his out-of-cell time by prohibiting him from going to mental health group. (*Id.* at p. 3). In protest, Bradley refused to allow Garcia to close his food port door. (*Id.*). Garcia's superiors, Sergeant Blake and Lieutenant John Doe 2, were alerted, and they also denied Bradley his out-of-cell time. Corrections Officer John Doe 1 and Brockmyer arrived and told Bradley to remove his arm from the food port. (*Id.*). When he refused,

---

[3] At the time of filing Bradley was incarcerated, and thus subject to the Prison Litigation Reform Act, 42 U.S.C. § 1997e. *See* 28 U.S.C. § 1915A(c).

they grabbed, pulled, punched, and kicked Bradley's arm, hand, and shoulder. (*Id.* at p. 4). During the altercation, Bradley pulled a wristband and beaded bracelet from Brockmyer's wrist and beads flew everywhere. (*Id.* at p. 5). The officers left. Lieutenant John Doe 2 and Sergeant Blake returned and told Bradley that he could now go to mental health group and to return the pieces of bracelet and wristband. Bradley said he first wanted a contraband shakedown slip, an incident report written, and medical treatment for his injuries. (*Id.*). At first Sergeant Blake said no, but then in an attempt to remove Bradley from his cell, Lieutenant John Doe 2 said they would agree to his requests. (*Id.*).

Bradley was then taken to mental health group. (*Id.* at p. 6). At the group meeting, he showed Behavioral Health Tech Rose the injuries to his arm and hand. (*Id.*). During the meeting, Lieutenant John Doe 2, Sergeant Blake, and Corrections Officers Robinson, Evinger, and Garcia stood nearby, and Bradley overheard the officers discussing plans to retrieve the remaining parts of the bracelet that were still in Bradley's possession by striping him naked and beating him. (*Id.*). Following the group meeting and after speaking with Sergeant Blake, Rose falsely reported that Bradley needed to go to the infirmary for suicide watch. (*Id.* at p. 7). Bradley refused, and Sergeant Blake told Rose thank you because now they can strip Bradley. (*Id.* at p. 8).

Blake, Evinger, Robinson, and Garcia began beating Bradley. (*Id.* at p. 8). He was removed from his wheelchair and officers began kicking and stomping on him. (*Id.* at p. 8). Bradley became unconscious and when he awoke his clothes and diaper had been removed. (*Id.* at p. 8).

He was then placed back in his wheelchair and taken to a crisis cell. (*Id.* at p. 9). Along the way, Bradley took Garcia's radio and pressed the emergency button. (*Id.* at p.

Page 3 of 16

9). Garcia began to strike Bradley's face. (*Id.*). In the crisis cell, John Doe 3, a mental health doctor, denied Bradley the use of a catheter, diaper, and his wheelchair. (*Id.* at p. 10). He was forced to lay in his own urine and feces, naked, and confined to his bed for two days. (*Id.* at p. 10).

After explaining for four days that he never asked to be placed on crisis watch, Bradley was released. (*Id.* at p. 12). He informed multiple members of the medical staff that his wheelchair had been damaged during the altercation with the corrections officers, and they stated that they would inform the ADA coordinator, Skidmore. (*Id.* at p. 12). Bradley wrote Skidmore a request for a replacement chair on November 1, 2019. (*Id.*). Because his chair was not fixed or replaced, in November he fell several times transferring from his wheelchair to his bed. (*Id.* at p. 13).

Bradley mailed the bracelet that he had taken from Brockmyer and broken pieces of his wheelchair to the United States District Court of the Southern District of Illinois, along with a motion for a preliminary injunction. (*Id.*).

On November 18, 2019, he was given a replacement wheelchair that was damaged. (*Id.*). Two days later a brand new wheelchair was brought, but the leg rest and foot pedals were missing. (*Id.* at p. 14). Officers told Bradley that the parts were removed on Evelsizer's orders because Bradley had previously mailed pieces of his broken wheelchair to the court. (*Id.* at pp. 14, 15). Evelsiver told Bradley that because Bradley sent out mail with the bracelet and wheelchair parts, he "got in trouble" by the warden and asked Bradley to contact him when Bradley had problems. (*Id.* at p. 14). Bradley sent a letter to Evelsizer and wrote a grievance for the leg rest and foot pedals to be placed back on the wheelchair. (*Id.* at p. 15). Without these parts, Bradley had to be pulled backwards to all

destinations and his feet dragged on the floor. (*Id.* at p. 15). Because his feet were not elevated and he was not provided orthopedic shoes, on November 26, 2019, he injured his foot on broken glass. (*Id.* at p. 15-16).

On December 16, 2019, Corrections Officer Sulser came into Bradley's cell and took his wheelchair. (*Id.* at p. 17). He was not given a replacement wheelchair until the next day. (*Id.*). During that time, Bradley had to fall to the floor and crawl to the cell door for medicine and food. (*Id.*).

On December 19, 2019, Bradley sent a civil complaint regarding a negligence claim to the State of Illinois Court of Claims. (*Id.* at p. 19). On January 9, 2019, he mailed a civil complaint regarding a personal property claim to the State of Illinois Court of Claims. (*Id.* at p. 20). On January 17, 2020, he received from the Court of Claims a package that included returned documents filed in his negligence case and personal property case and documents that belonged to another inmate. (*Id.* at p. 21). The letter from the state court indicated that Bradley's negligence claim was opened and never mailed. (*Id.*). The negligence claim is now time barred, and he is unable to refile. (*Id.* at p. 19).

Bradley states that Evelsizer, Lawrence, and Jeffreys conspired against him to deny him access to the courts. (*Id.* at p. 24). His clearly marked "legal mail" was opened to see what he is sending to the courts and to stop certain documents from being sent that would prove official misconduct. (*Id.* at p. 24).

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the claims into the following Counts:

**Count 1:**     Eighth Amendment claim against Garcia, Blake, Robinson,

Evinger, Brockmyer, and John Doe 1 for the use of excessive force against Bradley on October 27, 2019.

**Count 2:**  Assault and battery claim in violation of Illinois state law against Garcia, Blake, Robinson, Evinger, Brockmyer, and John Doe 1.

**Count 3:**  Eighth Amendment claim of cruel and unusual punishment against Garcia, Blake, Robinson, and Evinger for removing Bradley's catheter and diaper while he was unconscious on October 27, 2019.

**Count 4:**  Eighth Amendment claim against Lieutenant John Doe 2 and Rose for failing to intervene and protect Bradley from the use of excessive force by corrections officers on October 27, 2019.

**Count 5:**  Eighth Amendment claim of cruel and unusual punishment against Rose for falsely placing Bradley on crisis watch and refusing him medical treatment for his injuries resulting from the excessive force on October 27, 2019.

**Count 6:**  Eighth Amendment claim of deliberate indifference to a serious medical need against John Doe 3 for denying Bradley his wheelchair, catheters, and diapers while on crisis watch.

**Count 7:**  Eighth Amendment claim of unconstitutional conditions of confinement against John Doe 3 for leaving Bradley in a crisis watch cell confined to his bed, lying in his own feces and urine for two days.

**Count 8:**  Eighth Amendment claim of deliberate indifference to a serious medical need against Skidmore for not replacing Bradley's broken wheelchair resulting in Bradley falling several times.

**Count 9:**  Eighth Amendment claim of deliberate indifference to a serious medical need against Evelsizer for ordering that Bradley be provided with a wheelchair without leg rests and foot pedals and not providing orthopedic shoes causing injuries.

**Count 10:**  First Amendment claim against Evelsizer for providing Bradley a wheelchair without a leg rest and foot pedals in retaliation for mailing physical evidence to the courts.

**Count 11:**    Eighth Amendment claim of deliberate indifference to a serious medical need against Sulser for taking Bradley's wheelchair on December 16, 2019, and not providing a temporary replacement.

**Count 12:**    First Amendment claim of denial of access to the courts against Mailroom Staff for opening Bradley's legal mail on two occasions, resulting in the inability to pursue a legal claim.

**Count 13:**    First Amendment claim of denial of access to the courts against Jeffreys, Lawrence, and Evelsizer for instituting a policy of having Bradley's outgoing legal mail opened, read, and materials removed.

**Count 14:**    Civil conspiracy claim against Evelsizer, Lawrence, and Jeffreys for conspiring to deny Bradley access to the courts in violation of the First Amendment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly*[4] pleading standard.**

### INJUNCTIVE RELIEF

Bradley lists Acting Warden Alex Jones as a defendant in his official capacity only in order that Bradley may seek injunctive relief and a temporary restraining order. Bradley's motion for temporary restraining order and preliminary injunction was previously denied by this Court on February 10, 2020. (Doc. 7). Additionally, Bradley has notified that Court that he is no longer incarcerated at Menard. (Doc. 13). When a prisoner is transferred or released from IDOC custody his claims for injunctive relief are moot. *See Easterling v. Pollard,* 528 F. App'x 653, 656 (7th Cir. 2013). Accordingly, Bradley's requests

---

[4] *Bell Atlantic Corp. v Twombly,* 550 U.S. 544, 570 (2007).

for injunctive relief are denied without prejudice.

SEVERANCE

Rule 20 of the Federal Rules of Civil Procedure prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences *and* presents a question of law or fact common to all. *George,* 507 F.3d at 607 (emphasis added); 3A *Moore's Federal Practice* § 20.06, at 2036–45 (2d ed. 1978).

Even, if this provision is satisfied with respect to the joinder of Defendants, the Court has discretion to require the claims to proceed separately if joinder would cause "prejudice, expense, or delay." *See Chavez v. Ill. State Police,* 251 F.3d 612, 632 (7th Cir. 2001) (district courts are given "wide discretion ... concerning the joinder of parties") (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.,* 696 F.2d 53, 56 (7th Cir. 1982)); FED. R. CIV. P. 20(b). "This discretion allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.' " *Chavez,* 251 F.3d at 632 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.,* 623 F.2d 1371, 1375 (9th Cir. 1980)).

Here, while Bradley attempts to describe the events as a series of related transactions that spans from October 2019 to January 2020, the claims alleged involve distinct groups of defendants with very little overlap. Nine defendants are named in connection with his claims of excessive force and resulting injuries, three defendants are

Page 8 of 16

named in connection with failure to provide Bradley with an adequate wheelchair, and four defendants are named in connection with his claims of the mishandling of his mail and interference with his access to the courts. The only common defendant between the three groups is Defendant Evelsizer, who is named in the allegations regarding Bradley's inadequate wheelchair and conspiracy to deny him access to the courts. The fact the events alleged in Bradley's Complaint happened in a sequential timeline and one event somehow influenced the next does not convince the Court that the claims are a part of the same "series of acts or transactions." *See United States v. Cavale,* 688 F. 2d 1098, 1106 (7 Cir. 1982) ("Case law reveals that 'the word transaction contemplates a series of many acts depending not so much upon immediateness of their connection as upon their logical relationship.'") (quoting *United States v. Isaacs,* 493 F.2d 1124, 1158 (7th Cir.)).

To the extent it could be argued that Defendants are properly joined, the Court finds that the inclusion of all claims against these parties would run afoul of the Seventh Circuits admonition that "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012). The Defendants who are involved in the claims regarding not receiving an adequate wheelchair, mishandling of his mail, and denial of access to the courts have nothing to do with Bradley's claims regarding regarding excessive force and resulting injuries. Defendants would likely be prejudiced if all of the claims are allowed to proceed together.

For these reasons, Counts 1-7 shall remain in this action, and the merits of these claims will be reviewed in this Order. Counts 8-11 and 12-14 shall be severed into two separate actions.

### Counts 1 and 2

Bradley's claims that correctional officers used excessive force against him on October 27, 2019, survive screening. *Wilborn v. Ealey,* 881 F. 3d 998, 1006 (7th Cir. 2018).

Because Bradley's state law assault and batter claim involves the same facts as his Eighth Amendment excessive force claim, the Court will exercise supplemental jurisdiction, and Count 2 also survives screening against Garcia, Blake, Robinson, Evinger, Brockmyer, and John Doe 1. *See* 28 U.S.C. § 1367(a); *Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547-48 (7th Cir. 2018) (discussing assault and battery under Illinois law).

### Count 3

Bradley claims that after he was beaten to unconsciousness, Defendants Garcia, Blake, Robinson, and Evinger removed his clothes, diaper, and catheter. The derogatory comments made by the correctional officers, along with the excessive force, sufficiently allege that Bradley's clothes, diaper, and catheter were removed without authorization by medical personnel, in disregard of his medical needs, and "motivated by a desire to harass or humiliate rather than by a legitimate justification…" *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). Count 3 survives screening.

### Count 4

Bradley alleges that Lieutenant John Doe 2 and Behavior Health Tech Rose failed to protect him from the excessive force used by the correctional officers and to report the incident. Specifically, Bradley states that Lieutenant John Doe 2 watched while the other correctional officers beat him outside the mental health group area room. He also claims that Rose told Bradley to return the bracelet "or they will hurt you" (Doc. 1, p. 7), and

returned to the mental health group area after making a phone call knowing that officers were going to physically harm him. These allegations sufficiently state a failure to intervene claim against Lieutenant John Doe 2 and Rose. *See Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

## Count 5

Bradley's claim that Rose subjected him to cruel and unusual punishment by placing him on suicide watch with no legitimate basis will be dismissed because there is no constitutional right to avoid placement on suicide watch. *See Starks v. Couch*, No. 08-cv-407-GPM, 2009 WL 331357, at *2 (S.D. Ill Feb. 11, 2009); *Span v. Melvin*, No. 18-1078, 2018 WL 2944152, at *2 (C.D. Ill. June 12, 2018) (noting that several courts have noted "[t]emporary placement on suicide watch, when not necessary, does not implicate a liberty interest protected by the Due Process Clause, nor does it amount to cruel and unusual punishment under the Eighth Amendment.") (quoting *Jones v. Lee*, No. 9-CV-11283, 2012 WL 683362, at *4 (E.D. Mich. March 2, 2012)).

Count 5, however, will proceed against Rose as to Bradley's allegations that she did not ensure that Bradley was provided medical treatment for the injuries to his arm caused by Correctional Officers Brockmyer and John Doe 1. Because Bradley only states that he showed Rose his "injuries," the Court notes that it is not exactly clear at this stage whether Bradley was suffering from a serious medical need when he attended mental health group. *See Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (a prisoner's split lip and swollen cheek were not a serious medical need); *Zentmyer v. Kendall Cty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (minor scrapes and bruises did not amount to a serious medical need as failure to treat "the sorts of ailments for which many people who are not in prison

do not seek medical attention — does not…violate the Constitution.") (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

### Counts 6 and 7

Once placed on suicide watch, Bradley alleges that Mental Health Doctor John Doe 3 did not provide him the necessary accommodations. He was not given catheters, diapers, or a wheelchair and confined in his bed, forced to lay in his own feces and urine. Bradley's preexisting condition and paralysis of his right leg rendering him double incontinent and wheelchair bound could easily be considered serious medical conditions, and the refusal of John Doe 3 to treat those conditions may constitute deliberate indifference. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citations omitted). Therefore, Count 6 survives screening.

Additionally, leaving Bradley in the suicide cell without proper medical supplies forcing him to lay in his own waste also adequately pleads an Eighth Amendment claim for unconstitutional conditions of confinement, and Count 7 will proceed against John Doe 3. *See Wheeler v. Walker,* 303 F. App'x 365, 368 (7th Cir. 2008) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns…and general standards of dignity…") (quoting *DeSpain v. Uphoff,* 264 F.3d 965, 974 (10th Cir.2001)).

### IDENTIFICATION OF UNKNOWN DEFENDANTS

Bradley will be allowed to proceed with Counts 1 and 2 against John Doe 1, Count 4 against John Doe 2, and Counts 6 and 7 against John Doe 3. These defendants must be identified with particularity before service of the Complaint can be made. Bradley will have the opportunity to engage in limited discovery to ascertain his or her identity.

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the name of this individual is discovered, Bradley shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint. In that vein, the warden of Menard Correctional Center, Alex Jones, remains a defendant, in his official capacity only, and shall be responsible for responding to discovery aimed at identifying the unknown defendants.

**DISPOSITION**

*Severance*

**IT IS HEREBY ORDERED** that **COUNTS 8-14** are **SEVERED** into two new cases as follows:

> **First Severed Case:**      Counts 8, 9, 10, and 11 against Skidmore, Evelsizer, and Sulser;
>
> **Second Severed Case:**    Counts 12, 13, and 14 against Mailroom Staff, Jeffreys, Lawrence, and Evelsizer.

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1)    The Complaint (1);
(2)    Motion for Leave to Proceed *in forma pauperis* (Doc. 3);
(3)    This Memorandum and Order.

**IT IS FURTHER ORDERED** that the <u>**only claims remaining in this action, are COUNTS 1-7 against Garcia, Blake, Robinson, Evinger, Brockmyer, Rose, John Doe 1, John Doe 2, and John Doe 3.**</u> The Clerk of the Court is **DIRECTED** to terminate **Skidmore, Evelsizer, Sulser, Mailroom Staff, Jeffreys,** and **Lawrence** as defendants in this action.

*Merits Review*

**IT IS HEREBY ORDERED** that the Complaint survives preliminary review

Page 13 of 16

pursuant to 28 U.S.C. § 1915A. **COUNTS 1** and **2** shall proceed against **Garcia, Blake, Robinson, Evinger, Brockmyer,** and **John Doe 1, COUNT 3** shall proceed against **Garcia, Blake, Robinson,** and **Evinger, COUNT 4** shall proceed against **John Doe 2** and **Rose, COUNT 5** shall proceed in part against **Rose** for refusing Bradley medical treatment, **COUNTS 6** and **7** shall proceed against **John Doe 3.**

The Clerk of Court is **DIRECTED** to correct the docket in accordance with footnote 1.

The Clerk of Court shall prepare for **Garcia, Blake, Robinson, Evinger, Brockmyer, Rose, John Does 1, 2, 3** (once identified), and **Alex Jones** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Bradley. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the unknown defendants until such time as Bradley has identified him or her by name in a properly filed motion for substitution. Bradley is **ADVISED** that it is his responsibility to provide the Court with the name and service addresses for these individuals.

Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order. <u>Alex Jones, the warden of Menard</u>

Page 14 of 16

**Correctional Center, need not answer or otherwise respond to the Complaint. Jones must only enter his or her appearance and will receive further instructions on discovery at a later date.**

       **IT IS FURTHER ORDERED** that if judgment is rendered against Bradley, and the judgment includes the payment of costs under § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

       Finally, Bradley is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

       **IT IS SO ORDERED.**

       **DATED:   June 22, 2020**

                          *s/ Reona J. Daly*
                          **REONA J. DALY**
                          **United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.